Kayla Gassman for the appellant David Sanchez. The issue before the court is whether the seriousness of the murder offense, which had been dismissed by the state of Texas as justifiable force, or the need to punish Mr. Sanchez for that murder offense, were dominant factors in the district court's decision to vary upwards from a 5 to 11 month range to impose a 32 month sentence. Here, the district courts, at the revocation hearing, the district courts repeated emphasis on the fact that someone died as a result of the revocation offense, and its re-litigation of the murder case, including specifically Mr. Sanchez's self-defense justification, showed that what the court was essentially doing was deciding whether to hold Mr. Sanchez liable for a murder. Do I read the record correctly that the judge is talking about deterring the future criminal conduct and protecting the public? The judge does mention those factors prior to imposing the 32 month sentence, but I think it's important to note that she invokes those factors in between emphasizing again that someone died as a result of the offense and making findings that the conduct was not justified by self-defense. So the, in the court's case, I think it's clear that what this court is concerned with in reviewing a case like this is what the court actually did in the context of the hearing as a whole, and not just what factors the court stated explicitly when imposing the sentence. But don't you need to describe the fact, the criminal conduct at issue, in order to explain as a district judge why it is that the public needs protecting? Certainly I think the describing the facts of the revocation offense would obviously be relevant to the sentence the court is imposing, but what the court did throughout the hearing was actually re-litigate the facts of the murder case. Mr. Sanchez had admitted to the knife possession violation, as well as to the But the court's inquiries throughout the hearing went far beyond verifying the facts of that revocation offense and crossed to essentially determining whether Mr. Sanchez should be held criminally culpable for the murder, not simply for the knife possession. These are odd hearings, these 3583 hearings, because they're often assessing the violation, even though he admitted truthful to the amended petition, but then they also turn into the sentencing, same moment, correct? Yes. So it's a little hard always to tease out the line. And I'm just, as you're speaking, I'm thinking, I don't think we would want to, it's not a question of labels, but on the other hand, why would we be looking at the judge's questions as opposed to the stated reasons at the end where she does zero back in on protecting the public? Well, for one thing, it's not just the judge's questions. It's also, throughout the hearing, what the court noted as important. But, and having just said it's not labels, when you look at the transcript, she never used the word punish. She doesn't. But again, it's not about labels. And I think the court's precedent makes clear that it isn't. It would point the court towards, for example, United States v. Culbertson, which was a case where what the court did was look at the court's statements throughout the hearing. Remind me, that's our court. Yes, that is a specific case. Yes. It is a different type of error. It's a TAPIA error where the court, the district court, had relied on rehabilitation to, to increase the sentence. But the court stated, stated permissible factors when it imposed the sentence. But what this court did was went back and looked at the district court statements in the context of the hearing as a whole and noted that the district court statements throughout the hearing implicated both Ever since Miller and Rivera. Rivera is the later published decision, right? Yes. We've got a lot of unpublished decisions. Do you know of any decision by our court reversing a district court on this 3583 error ground where the district court didn't explicitly mention a prohibited factor? And that may not seem like the logical rule, but just in terms of our case law, can you think of one where a sentencing court was reversed? Certainly the court was reversed in Hudson, and that, that opinion is very abbreviated and I believe does not contain a lot of analysis that would tell us exactly what factors were mentioned by the district court when in the hearing, but that certainly is a reversal. Here I think the important thing to do is to look at the context of the court statements at the hearing, throughout the hearing as a whole, where the court repeatedly emphasized the result of the revocation offense and the fact that someone died as a significant fact. It did seem, sorry, go ahead. No, you go. I've asked a lot. Weren't these facts specifically set forth in the factual basis? They were set forth in the exhibits. The pre-sentence report? Yes. The facts, many of the facts were contained in the exhibits that were presented by the government as supporting the facts underlying the revocation. Supporting the act of violence and the description, which apparently the judge relied on finding this person to be a threat to the public. Well, my point is what the court did was go beyond what is permissible, which is verifying the nature of the knife possession violation and went beyond that to determining whether or not Mr. Sanchez had in fact committed a murder and should be punished for having. Why can't we look at it as, she's not disagreeing with Texas. Texas says if you want to stand your ground, you can stab somebody. So the indictment was dismissed or whatever happened to it. Well, one way of looking at it is not Judge Jack is saying, I don't agree, I'm going to punish you for the murder after all. Instead, most of her inquiry was, why didn't you call the police? You had time to call the police. And the inference is people that don't resort to the police before they stab someone are dangerous. So I need to protect the public. And so she's really inquiring into, I don't know why in this episode you never called the police. And from that, she says finally at the end, I've got to protect the public 32 months. So I agree that up to a certain point, she does make inquiries about why he didn't call the police, which would go to the nature of the violation and the extent of the breach of the court's trust. But I think it is not a fair reading of this record to say that Judge Jack's determination doesn't disagree with the State of Texas. Is the standard review not a fair reading? I thought obviousness is built into it, even if it's not subject to plain error. Well, obviousness, sure. I believe the obviousness in terms of that a revocation sentence must be plainly unreasonable. I think that is a question of the court's precedent and whether it is clear to the district court the precedent that it must be following and whether the legal error was clear. Not that the district court is permitted to have this mushy analysis. You've got to be pretty sure the dominant factor was a prohibited one. Usually that's when they actually just say it, in the top of your circumstance. I want to rehabilitate you. I'm going to give you more time so you get the extra day and then you get the treatment. They say it. It's too bad. And I would think this line of authority is moving in that direction when the district judge just misspeaks and says you need more punishment. So I think what I would point to on that is I would flip your earlier question to me about this Court's recent unpublished cases back, because what those cases say is, you know what, it doesn't matter what the district court said, because in those cases the district court did mention impermissible factors when imposing the sentence. And this court said, yeah, but we looked at the hearing as a whole and the court mentioned those factors, but really when you look at the context, the court was talking about the breach of trust or talking about verifying the nature of the violation and was not actually punishment. But if you look at the context of what the court did and said here throughout the hearing, where the court repeatedly emphasized the result of the conduct, admitted, agreed that it was relitigating the murder, what the court actually did was decide that Mr. Sanchez was criminally culpable for the murder and should be punished more because of that. Well, she was very explicit in saying, obviously, that the reason for the sentence was because of the threat, the potential threat to the public. So just because she discussed why she's basing her opinion on that, she was thorough enough at the end to give the permissible reasons. So how can we ignore that? I'm not asking the court to ignore it. My point is that the fact that the court stated some permissible factors doesn't mean that she didn't treat impermissible factors as a dominant factor. The court said so in Rivera and Culbertson both, where the district court had stated permissible factors, but this court went and looked at the hearing and the court statements and context and said that the permissible factors didn't mean that the impermissible ones didn't dominate. For example, I would turn it back again to Rivera, where this court said the punishment and seriousness were dominant factors in part because of the district court's focus on the facts of the murder offense. Well, here we have exactly that. The district court did more than focus on the facts of the murder offense. The district court re-litigated those facts herself and admitted that that's what she was doing. So the fact that the court's re-litigation of the murder took up so much of the hearing and so much of the court's focus shows that the judgment about the seriousness of that conduct and the need to punishment were dominant factors, even if the court did also state some permissible factors alongside that. And again, to turn back to Culberson, that's exactly what happened in Culberson as well, where the court had made statements throughout the hearing that implicated both permissible and impermissible factors, and this court reviewed the hearing and the court statements in context and said that the impermissible factors predominated, even though just prior to imposing the sentence, the district court had focused on permissible factors. I also think it is important to remember that this court must hold a line and make a distinction between permissible sanctions for breach of trust and impermissible punishment, first because this court's case law and the statute require there to be a distinction, require the district court to be careful not to be imposing punishment for a revocation offense. And it's also important that there are constitutional considerations animating that rule, because revocation cannot be punishment for new criminal conduct, specifically because the authority with jurisdiction over that new criminal conduct is the appropriate authority to determine the seriousness of that offense and whether there's any need for punishment, after finding a criminal offense beyond reasonable doubt. But here, exactly the opposite happened, where the state of Texas charged Mr. Sanchez, investigated the case, affirmatively dismissed the case because it was justifiable in force under its own law, and then the federal revocation court relitigated the same facts of the same case and made a determination that, in its view, Mr. Sanchez's conduct was not sufficiently justified by self-defense and, therefore, that the revocation offense was more serious. And there is a punishment. Was the federal revocation stayed pending? I believe it was. So what actually happened is Mr. — The first petition says murder. Yes. Then there's an amended petition like, well, it's been dismissed, so it's the violent, right? Yes, exactly. I don't think it was formally stayed, but Mr. Sanchez had been arrested by the state process. He was in state custody. So the initial petition alleging the murder was filed and essentially sat there while Mr. Sanchez went through the state process. Then about, I think, ten months later, the state dismissed the murder case and the probation officer filed the amended petition, which amended the murder allegation to a knife possession allegation. And then, of course, at the hearing, proved the case or the case was litigated as if it was still a murder case when, in fact, it was not. Another case I think it is important to discuss is Chandler, United States versus Chandler, because this court's case law has actually not been clear whether this Miller-type error is an error of procedure or substance. But I think United States versus Chandler is particularly illustrative with regard to a substantive unreasonableness analysis. There, the court stated multiple permissible factors as a basis for a sentence, but this had also stated multiple times that the defendant was a police officer. And what this court did was went back and looked at the court's statements in context and determined that those statements were equivalent to the judicial court relying on the defendant's socioeconomic status, which was an impermissible factor. So the court held that that was substantively unreasonable and vacated the sentence. I do want to just briefly address the standard of review. My position is that this error was preserved. While not citing, I think, to the specific authority that would be ideal, the defense attorney did repeatedly object to the court relitigating the murder case, that the murder was not the basis for the revocation. And I think in context, that was sufficiently specific to alert the court to defense counsel's objection to punishing Mr. Sanchez for the murder at this revocation hearing. But even if the court disagrees and finds that the error was not preserved, all the prongs of plain error review are met under Rivera and Culberson in particular, which make any error plain and make clear that an upward variance from five to 11 months to 32 months based on an impermissible factor would affect Mr. Sanchez. Am I right? Both those cases we found error, but both times we didn't find plain error? So Rivera, the court did not reverse on the fourth prong. Culberson, the court did reverse. And Chandler was a plain error case as well where the court did reverse. And here, I think, on the fourth prong, if the court needs to reach that, it is important that defense counsel did repeatedly object to what the district court was doing. And even if the court ultimately determines that those objections were insufficient, in Culberson, one factor the court used on the fourth prong to reverse was the fact that defense counsel had objected, even if this court ultimately determined that the objection was not specific enough to preserve the error. And here, defense counsel repeatedly and vociferously objected to what the district court was doing. It's also, I think, on the fact that the offense would be reversible on the fourth prong of plain error, again, because the state of Texas had determined that Mr. Sanchez's conduct was not criminal and did not warrant punishment. I think to allow the revocation sentence to stand as punishment, I think, would impugn the integrity of the system that's set up for revocation sentencing. If the Court has no further questions, I'll reserve my time for rebuttal. Thank you. Thank you. May it please the Court. Amy Alanise for the United States. The guidelines specifically provide that the purpose of supervised release is to reintegrate the ---- You talk up a little. I'm sorry. Speak up a little. Oh, I'm sorry. The guidelines specifically provide that the purpose of supervised release is to reintegrate an offender into the community. And that is exactly what Judge Jack was trying to assess here. She was also assessing the extent and the magnitude of his multiple, and this was a multiple, breach of the trust of the Court. And that's exactly what she did here. This Court and the guidelines also provide that a district court can consider the seriousness of the underlying offense in determining the magnitude of the breach of trust. Again, that's exactly what Judge Jack was doing here. Although in fairness to opposing counsel, I don't recall the judge talking much about breach of trust. She didn't. She seemed to focus more on protecting the public. She did specifically say that at the end. She didn't use any magic words like breach of trust, but she did. In fact, that was the first thing out of her mouth after the probation officer made his recommendation of a 34-month revocation sentence. She says, he was on supervised release. He did not call the police. He got a knife. And that was her focus from the beginning. And as to the allegation that she was interested in relitigating the facts of the murder, if you look carefully at the record, and I think this is around R107, the judge says what I have just mentioned, and then immediately the defense lawyer is the one who starts talking about the facts and says that a mob came to his house and he was protecting himself. So if you look carefully at the record, it's really defense counsel who starts going into all of that. But it's, and I pointed this out in the brief, there are many times when she comes back to, but you were on supervised release. You could have just called the police. I think the prosecutor, you know, kind of makes comments about this, too, about, you know, he knew he was on supervised release. He knew he needed to stay out of trouble. He doesn't avoid trouble. You know, he invites this enraged husband of his recently ex-girlfriend to his house. You know, in the 20 minutes it took the man to get to his house, he arms himself with a knife and goes outside to wait. And those are not the actions of a person who is concerned about keeping his contract with the district court. And I believe that is what Judge Jack focused on throughout this. And, of course, as has been mentioned here, at the end, when she is stating her variant sentence, she mentions the need to deter future criminal conduct to protect the public, which is certainly a permissible factor. Is that the end of the story? I mean, or their point is sort of what's good for the goose is good for the gander. In cases where we do see prohibited factors mentioned, we've been willing to overlook that looking at the full context. So her argument is, well, here we have a legitimate factor mentioned, but if you look at the whole context, you would accept that analysis? In other words, it's not determinative that the judge at the end says a legitimate 3583 factor, or do you disagree with that? Well, again, I don't think there's any magic words that can be said. I think it is a factor. It shows all these other factors were also on her mind. But I agree. I mean, I think you need to look at the whole thing. Is all the tapia line of authority appropriate? I'm sorry? The rehabilitation. Is it the exact same regime that we're just looking at the sentence, we're making sure the judge didn't mention I want to rehabilitate you? All those case laws, all that case law is applicable here? Well, yes. I think so. So we're just teasing out what's the dominant factor? Yes. And I think that was the point that was made on rehearing in Rivera, too, that it is a fine line sometimes. And it's, you know, in that case, the Court said it would be best left to future cases. Here, I just don't think you can say that any improper factor was the dominant factor. I'm not sure there was really no improper use of this factor, since the Court and the guidelines do contemplate that the judge can consider the seriousness of the violation in determining the magnitude of breach of trust. And I think when you consider the context of Judge Jack's comments in their phrases in isolation, there was nothing improper about this revocation sentencing. And also, I want to distinguish Rivera. In that case, this Court did find that the district court had improperly focused on the wrong factors. But if you go and you look at the facts of Rivera, they're very different. That defendant had committed a murder and had been sentenced to murder. And the judge in that case focused very much on the brutality of the murder, the fact that the defendant appeared in her court very unremorseful. And the district court also commented that the defendant would only do about eleven years on that murder. So none of that type of detail was gone into here. This was a totally different focus here. So I don't believe the binding of error in Rivera applies here. And just a quick argument about standard of review. I think I've set all that out in great detail in the brief. But at no point does the defense lawyer ever stand up and say, Judge, you are not allowed to consider these factors. You are not allowed to consider the seriousness of the offense or the need for punishment. If he had, we probably wouldn't be here having this conversation. It would have been really simple, and the judge could have explained exactly to what degree she was using those factors. But they didn't stand up and make that objection. Judge Higginson, you ask about all the unpublished cases, and I was very struck as I was reviewing for argument. I don't think there has been a single reversal since Rivera and Rivera II on the A or A2A factors. I think the closest the Court got was Rivera, in which an error was found, but then there was no, the Court found that the fourth prong of plain error had not been satisfied. So that's probably the closest I saw in my review. And just briefly on Issue 2, the defendant really has not shown that this sentence is substantively unreasonable. It's really just the same arguments in the context of substantive versus procedural unreasonableness. But, again, when you look at the record, there is simply no showing that an improper factor was a dominant factor in the sentencing. So there's no showing that the judge focused on that improper factor or gave it too much weight. That's really all I have, unless you have further questions. Thank you very much, Counsel. To respond to a few points, the government pointed out that there were multiple violations in this case, but I think it is important to note that after the district court accepted the pleas of true to the drug-related violations, the court never mentioned them again. And just prior to imposing the sentence, the court specifically disclaimed that it was relying on Mr. Sanchez's history, noting that it didn't believe that the history was relevant. So in context, I think it's clear that the court is really sentencing based on the knife possession and in doing that went beyond verifying the knife possession and instead relitigated the murder and determined that Mr. Sanchez should be punished for a murder. Are courts calling 3583 a no-retribution rule? Are we using that simplified expression of what we're doing? I have not seen this court call it anything in particular. I can say that other circuits may or may not be. I haven't seen that. But certainly I think that would be an accurate summary of what the rule is, which is that the revocation is not to punish any new criminal conduct and that that should be left to the jurisdiction with the authority to actually charge and punish any new criminal offense. And here I want to emphasize again that the court agreed that it was relitigating the murder case. In response to defense counsel objecting, I believe at page 122 of the hearing, the defense counsel objected again to the court retrying the murder and said that if the court was going to do that, the court should listen to or watch all of the video statements from the witnesses and not just Mr. Sanchez's statement. And the court responded, this is a preponderance of the evidence. I am not here for beyond a reasonable doubt. And when defense counsel continued to object, the court stated again, this is a preponderance of the evidence. So the court is agreeing that what it is doing is determining whether or not Mr. Sanchez had an adequate self-defense justification and if not, whether or not he actually committed a murder and should be criminally culpable for a murder. The court mentioned again, and the government also mentioned the multiple unpublished cases from this court affirming sentences against an argument like this. But I think it's important to look at all those cases and note that in none of those cases is there a lengthy hearing where the district court relitigates the facts of a dismissed state case and bases the sentence in large part on its own determination that the self-defense justification that had been found to be true by the state of Texas, that the court was not convinced that it was adequate. Do you think a lot of those are where the defendant's denying the truth of the violation? Therefore, it's going to be even more understandable you'd have blurring? So those cases do not have a lot of analysis. Most of them, I believe, are summary calendar unpublished opinions. My reading of them is that I think a lot of them did involve pleas of true, but where the focus of the hearing, the discussion at the hearing was about the violation, was about the defendant's specific violation, and then in just the court's sort of standard announcement of the sentence, the court included the impermissible factors that it would announce at a regular sentencing as opposed to a revocation sentencing. And so that was the only mention of the impermissible factors was kind of at the end in that list of reasons for the sentence, as opposed to here where you actually have an entire hearing where we can review what the district court actually focused on and what the court considered to be important before selecting the sentence. So it's not just a matter of the kind of standard list of reasons that the district court gives for the sentence, but what the court actually did and actually focused on throughout the hearing. Rivera, I think, is actually helpful because in that case, what this court looked at in determining whether or not the impermissible factor was dominant was it looked at the district court's focus on the facts of the murder case. And here we have exactly that situation, where the court focused extensively on the facts of the murder offense and the self-defense justification. I think that tells us that what the court considered to be important was whether Mr. Sanchez should be held liable for a murder because he had engaged in this conduct without an adequate self-defense justification. So I think a reading of the record as a whole shows that the court's focus was on the impermissible factors and that even though it did state some permissible factors, the impermissible factors were the court's dominant consideration in selecting the 32-month sentence. So for that reason, I ask this court to find that the sentence is unreasonable and vacate and remand for resentencing. Thank you, counsel. Thank you both.